IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CLAYTON G. P., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20-CV-368-CVE-JFJ |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff Clayton G. P. seeks judicial review of the Commissioner of the Social Security Administration's decision finding that he is not disabled. For the reasons explained below, the undersigned **RECOMMENDS** that the Commissioner's decision denying benefits be **REVERSED AND REMANDED**.

**I.    General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established

---

[1] Effective July 9, 2021, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

Plaintiff, then a 31-year-old male, applied for Title II disability insurance benefits and Title XVI supplemental security income benefits in December 2017, alleging a disability onset date of November 15, 2013. R. 15, 251-258. Plaintiff claimed he was unable to work due to conditions including diabetes mellitus ("diabetes"), epilepsy, retinopathy, bipolar, and anxiety. R. 275. Plaintiff's claims for benefits were denied initially on July 12, 2018, and on reconsideration on December 14, 2018. R. 92-161. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted the hearing on November 12, 2019. R. 32-58. The ALJ issued a decision on November 25, 2019, denying benefits and finding Plaintiff not disabled because he could perform other work existing in the national economy. R. 15-27 . The Appeals Council denied review, and Plaintiff appealed. R. 1-3; ECF No. 2.

The ALJ found Plaintiff's date last insured was September 30, 2017. R. 17. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 15, 2013. *Id.* At step two, the ALJ found that Plaintiff had the following severe impairments: diabetes; diabetic proliferative retinopathy with macular edema in the right eye and moderate non-proliferative diabetic retinopathy without macular edema in the left eye; major depressive disorder; post-traumatic stress disorder ("PTSD"); and generalized anxiety disorder. R. 18. The ALJ found his medically determinable impairments of migraines, hypertension, and history of seizures were non-severe. R. 18. At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments. R. 18-20. In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had mild limitations in the areas of (1) understanding, remembering, or applying information and (2) adapting or managing oneself; and moderate limitations in the areas of (1) interacting with others and (2) concentrating, persisting, or maintaining pace. R. 19-20.

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that Plaintiff had the RFC to perform a range of light work as follows:

> [T]he claimant can lift no more than twenty pounds occasionally and ten pounds frequently. He can sit for up to six hours out of an eight-hour workday and can stand and/or walk up to six hours out of an eight-hour workday. He can frequently climb ramps or stairs; he cannot climb ladders, ropes, or scaffolding. He cannot be exposed to unprotected heights, dangerous machinery, sharp objects, open flames, or bodies of water. He has limited depth perception (occasional). The claimant can perform simple and detailed tasks, reasoning level 3 and below. He can tolerate occasional contact with coworkers and supervisors and cursory and superficial contact with the general public.

R. 20. At step four, the ALJ found that Plaintiff was unable to perform past relevant work. R. 25. Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that

4

Plaintiff could perform other unskilled light work, such as Laundry Sorter, Food Product Sorter, and Housekeeping Cleaner. R. 26-27. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 27. Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled.

### III.     Issues

Plaintiff raises five points of error in his challenge to the denial of benefits, which the undersigned re-organizes into three for clarity: (1) the ALJ failed to address whether Plaintiff's vision impairments medically equaled a listed impairment at step three; (2) the ALJ failed to link evidence of Plaintiff's vision limitations to the RFC; and (3) the ALJ failed to properly evaluate Plaintiff's testimony regarding his vision limitations. ECF No. 17. For the reasons explained below, the undersigned recommends reversing the ALJ's decision based on issues raised in the second allegation of error. Specifically, the ALJ committed reversible error by failing to link his limited RFC finding that Plaintiff had only "occasional" limited depth perception to evidence in the record, and by failing to otherwise adequately account for Plaintiff's vision impairment in the RFC. The undersigned does not substantively address other issues raised in Plaintiff's briefing. However, the undersigned does refer to evidence discussed in the other allegations of error, all of which relate to Plaintiff's vision.

### IV.     Analysis - ALJ Committed Harmful Legal Error by Failing to Link RFC Findings Regarding Vision Limitations to Objective or Subjective Evidence

Plaintiff contends that the ALJ failed to adequately account for his severe diabetic retinopathy in both eyes in determining the RFC. In support, Plaintiff points out that the ALJ found Plaintiff's retinopathy to be a severe impairment but then failed to account for extreme

vision problems observed at an optometry visit in June 2019 with Julie Soto, M.D.[2] R. 627-632. At that visit, Plaintiff complained of constant blurred vision at both near and distance in both eyes. R. 627. He also complained of floaters, vision loss, decreased vision, eye pain, blood spot in vision, and halos. *Id.* Testing revealed nearsightedness and astigmatism in both eyes. R. 632. After examination and testing, Dr. Soto diagnosed Type 1 diabetes with proliferative diabetic retinopathy with macular edema in the right eye, with presence of intraretinal edema fluid in the right eye; and moderate non-proliferative retinopathy without macular edema in the left eye. R. 630-631. Dr. Soto recommended laser surgery in the right eye, given Plaintiff's history of poor compliance and follow-up. R. 632. She informed Plaintiff of the importance of improved blood sugar control, or he would risk worsening of diabetic retinopathy with possible permanent vision loss, and risk of blindness without treatment. *Id.*

The ALJ summarized this examination in the decision. R. 23. In describing Plaintiff's severe impairments at step two, the ALJ essentially copied Dr. Soto's diagnosis regarding Plaintiff's eye condition – "diabetic proliferative retinopathy with macular edema in the right eye and moderate non-proliferative diabetic retinopathy without macular edema in the left eye." R. 18. However, the ALJ assigned only one RFC limit that was clearly related to vision – that Plaintiff had "limited depth perception (occasional)." R. 20. The ALJ did not explain the basis for this RFC limitation. Later in the decision, the ALJ further explained that, due to Plaintiff's history of seizures, blurred vision, and limited depth perception, Plaintiff was also limited to frequently climbing ramps or stairs; no climbing ladders, ropes or scaffolding; and no exposure to unprotected heights, dangerous machinery, sharp objects, open flames, or bodies of water. R. 24. The ALJ

---

[2] The ALJ states that this this exam took place on August 13, 2019. R. 23. However, the undersigned reads this record as stating the exam occurred on June 13, 2019. R. 627, 632. The difference is not material for purposes of decision.

additionally stated that Plaintiff's "poor blood sugar control and irregular eye examinations have likely contributed to the deterioration of his eyes and will continue to do so unless addressed." *Id.*

"'The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996)). Moreover, in reaching the RFC assessment, the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004).

Here, the ALJ completely failed to explain the RFC limitation of "limited depth perception (occasional)" and failed to otherwise properly account for Plaintiff's blurred vision and eye pain in the RFC. The ALJ cites no part of the record to explain his limitation of occasional limited depth perception, and such a limitation is not apparent from the record or any other part of the ALJ's decision. *See* SSR 96-8p. In particular, it is troubling that the ALJ assigned only an "occasional" limit to depth perception, when there is no indication in the record that the frequency of Plaintiff's blurred vision or eye pain was "occasional." To the contrary, at his visit with Dr. Soto, Plaintiff reported his blurred vision and eye pain were "constant." R. 627. In addition, while the ALJ assigned certain postural and environmental limitations based in part of blurred vision and limited depth perception, it is not apparent from the decision that the ALJ adequately considered and accounted for Plaintiff's severe impairment of diabetic retinopathy in both eyes and macular edema in the right eye. As a result, the ALJ's RFC is unsupported by substantial evidence as it relates to Plaintiff's vision impairment, and remand is required.

In her response brief, the Commissioner raises three broad arguments in support of the ALJ's RFC related to vision. First, the Commissioner argues the ALJ did include limitations in the RFC to account for the issues Dr. Soto documented, by providing certain postural and environmental limits based on blurred vision and limited depth perception, as well as limiting him to "occasional" limited depth perception. The Commissioner points to the inconsistent evidence regarding Plaintiff's vision issues up to Dr. Soto's exam in June 2019, such as denying loss of vision or blurry vision at a PA visit at Grand Lake Mental Health Center in 2017. R. 495. However, the Commissioner does not point to any evidence supporting the ALJ's "occasional" limited depth perception limitation or explain how the postural and environmental limitations adequately accounted for Plaintiff's visual impairment and eye pain. Even if a depth perception limitation was the only vision limitation warranted in the RFC, the ALJ failed to explain why this limitation would be only "occasional," as opposed to constant, given that Plaintiff complained of "constant" blurred vision and eye pain. R. 627.

Second, the Commissioner contends that the ALJ "reasonably relied" on the 2018 opinions of the physical agency reviewers as evidence supporting Plaintiff's eye limitations, because they "reasonably found" that Plaintiff had no vision limitations stemming from his diabetic retinopathy. ECF No. 22 at 6 (citing R. 24). The physical agency reviewers both found Plaintiff to have "severe" diabetes but did not find any medically determinable eye impairment. R. 98, 109-110, 127, 146. Neither agency reviewer found any visual limitations were warranted in the RFC. R. 100, 112, 132, 151.

The Commissioner's argument is unavailing. The ALJ found the physical agency reviewers' opinions to be "persuasive," based in part on their consistency with Dr. Soto's eye examination. R. 24. However, the agency reviewers' opinions are actually inconsistent with Dr.

Soto's examination. Dr. Soto found nearsightedness, astigmatism, and diabetic retinopathy with macular edema in the right eye. R. 632. The agency reviewers, by contrast, found Plaintiff had no eye impairments and no vision limitations. Further, the ALJ found the agency opinions consistent with the fact that Plaintiff had "few recent complaints other than eye pain and blurry vision in the record." R. 24 (citing R. 627-632, 650-733). However, the agency reviewers did not account for Plaintiff's eye pain and blurry vision in their opinions, and they gave opinions prior to Dr. Soto's exam in 2019. Accordingly, the ALJ's discussion of the agency reviewers' opinions is untethered to any evidence regarding Plaintiff's eye impairment. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (stating that ALJ must articulate a medical opinion's supportability and consistency to determine its persuasiveness).

The agency reviewers' findings are also inconsistent with Plaintiff's prison medical records from 2016. These records are notable, because in October 2016, Plaintiff complained of right eye pain and blurry vision with glasses, and the prison physician diagnosed him with proliferative diabetic retinopathy in the right eye and severe non-proliferative diabetic retinopathy in the left eye. R. 400. The agency reviewers did not address these 2016 records and do not appear to have considered them in their analysis. The Commissioner argues the agency reviewers must have considered Plaintiff's prison medical records, because those records were available to them. In either case, the reviewers ignored Plaintiff's October 2016 diagnosis of serious eye conditions when evaluating Plaintiff's claims. As a result, the agency reviewers' opinions provide no insight into the basis for the ALJ's RFC regarding vision limitations. Given the ALJ's faulty analysis, it was improper for the ALJ to rely on those physical agency opinions as support for his RFC findings regarding Plaintiff's serious eye problems.

Third, the Commissioner contends that the ALJ properly discounted Plaintiff's testimony regarding the severity of his vision impairment, citing the ALJ's general statement that he found Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms to be inconsistent with the objective evidence. R. 21, 23. At the November 2019 hearing, Plaintiff testified as to the severity of his eye problems, complaining that he was unable to perform a job in 2017, because his diabetic retinopathy meant he could not stare at a computer; that he was unable to see well with only the right eye; that he no longer drove due to vision problems; and that he did not watch television for very long, because he could not see the people on screen. R. 42, 49-51, 54. Despite the Commissioner's argument otherwise, the ALJ did not, in fact, discount Plaintiff's testimony as it related to his eyes or vision. Rather, the inconsistencies the ALJ identified pertained to Plaintiff's mental health. R. 23-24. Regarding Plaintiff's vision, the ALJ found only that Plaintiff's "poor blood sugar control and irregular eye examinations have likely contributed to the deterioration of his eyes and will continue to do so unless addressed," and that Plaintiff had "few recent complaints other than eye pain and blurry vision in the record." R. 24. These findings suggest that the ALJ found Plaintiff's vision complaints were actually supported in the record. Plaintiff's statements support potentially greater RFC limitations related to vision, and the ALJ did not discount this testimony. *See* SSR 16-3p, 2016 WL 1119029, at *7 (Mar. 28, 2016) (stating that ALJ must determine consistency of claimant's statements with the objective medical record, and if they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities").

In the absence of evidence supporting the ALJ's RFC as to the effects of his diabetic retinopathy in both eyes and macular edema in the right eye, reversal and remand is required. *See Suzi S. v. Saul*, No. 2:19-CV-00020-TC-EJF, 2020 WL 10057461, at *5 (D. Utah Mar. 11, 2020)

10

(finding remand warranted where ALJ acknowledge retinopathy was a severe impairment but failed to provide any analysis of how it affected claimant's ability to work), *report and recommendation adopted*, No. 2:19-CV-00020-TC-EJF, 2020 WL 1812374 (D. Utah Apr. 9, 2020). The ALJ's failure to account for Dr. Soto's June 2019 findings in the RFC and his improper reliance on the physical agency reviewer opinions regarding vision limitations demonstrate he engaged in impermissible "picking and choosing among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quoting *Hardman*, 362 F.3d at 681) (cleaned up).

The error is not harmless, because the ALJ failed to fully account for Plaintiff's severe eye conditions, and the RFC limitations he did provide based on blurry vision and limited depth perception are likely insufficient, given the evidence from Dr. Soto's exam. Further, the ALJ did not adequately explain his RFC limitation of "occasional" limited depth perception, which does not appear to be documented in the record and is likely inadequate to account for his severe vision problems.

## RECOMMENDATION

The undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED AND REMANDED** for further proceedings consistent with this Report and Recommendation.

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by February 15, 2022.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

**SUBMITTED** this 1st day of February, 2022.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**