UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CLAYTON G. P., | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 20-CV-0368-CVE-JFJ |
| | ) |
| KILOLO KIJAKAZI, | ) |
| **Acting Commissioner of Social** | ) |
| **Security Administration,**[1] | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

Before the Court is the report and recommendation (Dkt. # 24) of the magistrate judge recommending that the Court reverse and remand the Commissioner of the Social Security Administration's (the Commissioner) decision to deny plaintiff's claim for disability benefits. Defendant has filed a timely objection (Dkt. # 25) to the report and recommendation, and plaintiff has filed a response (Dkt. # 26) to defendant's objection.

### I.

On December 18, 2017, plaintiff Clayton G. P. applied for Title II disability insurance benefits and Title XVI supplemental security income benefits. Dkt. # 15-2, at 16. Plaintiff alleged in both applications that he had been disabled since November 15, 2013. Id. Plaintiff's claims were initially denied on July 12, 2018, and then denied upon reconsideration on December 14, 2018. Id. Plaintiff requested a hearing before an administrative law judge (ALJ), and a hearing was held on

---

[1] Effective July 11, 2021, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

November 12, 2019. Id. Plaintiff was represented by counsel at the hearing. Id. On November 25, 2019, the ALJ issued a decision concluding that plaintiff "has not been under a disability within the meaning of the Social Security Act from November 15, 2013, through the date of [the ALJ's] decision" because plaintiff 1) "does not have an impairment or combination of impairments that meets or medically equals the severity of [a listed impairment]"; and 2) plaintiff "has the residual functional capacity to perform light work . . . [and] there are jobs that exist in significant numbers in the national economy that the claimant can perform." Id. at 17, 19, 21, 27. The Appeals Council found no basis to change the ALJ's decision and denied plaintiff's request for review, and the ALJ's decision is the final decision of the Commissioner. Id. at 2. Plaintiff filed this case requesting judicial review of the denial of his claim for disability benefits, and the matter was referred to a magistrate judge for a report and recommendation. The magistrate judge recommends that the Commissioner's decision be reversed and remanded.

## II.

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within 14 days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

Defendant objects to the magistrate judge's recommendation that the Court reverse and remand the Commissioner's decision. Dkt. # 25, at 1. Namely, the magistrate found that the ALJ "committed harmful legal error" because "the ALJ completely failed to explain the RFC limitation of 'limited depth perception (occasional)' and failed to otherwise properly account for [p]laintiff's blurred vision and eye pain in the [residual functional capacity determination]." Dkt. # 24, at 7. Defendant argues that the ALJ reasonably took all of [the record] evidence into account . . . and found that [p]laintiff has vision limitations, but that he could work." Dkt. # 25, at 1.

The Court may not re-weigh the evidence or substitute its judgment for that of the ALJ, but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

The Social Security Administration has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." *Id*. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work

3

activities. *See* 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." *Allen*, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him] from performing [his] past relevant work. *See id.* Even if a claimant is so impaired, the agency considers, at step five, whether [he] possesses the sufficient residual functional capability to perform other work in the national economy[.] *See id.*

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).

Here, at step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 15, 2013. Dkt. # 15-2, at 18. At step two, the ALJ found that plaintiff had the following severe impairments: diabetes mellitus (DM); diabetic proliferative retinopathy with macular edema in the right eye and moderate non-proliferative diabetic retinopathy without macular edema in the left eye; major depressive disorder; post-traumatic stress disorder (PTSD); and generalized anxiety disorder. Id. at 19. The ALJ further found that plaintiff had the the non-severe impairments of migraines, hypertension, and a history of seizures. Id. At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the SSA's listed impairments in the appendix of the relevant disability regulation. Id. The ALJ found, "after careful consideration of the entire record," that plaintiff has the residual functional capacity (RFC) to perform light work with certain limitations:

> [T]he claimant can lift no more than twenty pounds occasionally and ten pounds frequently. He can sit for up to six hours out of an eight-hour workday and can stand and/or walk up to six hours out of an eight-hour workday. He can frequently climb ramps or stairs; he cannot climb ladders, ropes, or scaffolding. He cannot be exposed to unprotected heights, dangerous machinery, sharp objects, open flames, or bodies of water. He has limited depth perception (occasional). The claimant can perform simple and detailed tasks, reasoning level 3 and below. He can tolerate occasional contact with coworkers and supervisors and cursory and superficial contact with the general public.

4

Id. at 21. Accordingly, at step four, the ALJ found that plaintiff is unable to perform past relevant work. Id. at 26.

The ALJ decided at step five of the analysis that, based in part on the testimony of a vocational expert and the ALJ's RFC determination, sufficient jobs exist in the national economy to allow plaintiff to work. Id. at 27. At step five, the ALJ must consider a claimant's RFC, age, education, and work experience to determine if other work exists that a claimant is able to perform. Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988). If the claimant can adjust to work outside of his past relevant work, the ALJ shall enter a finding that the claimant is not disabled. 42 U.S.C. § 423(d)(2)(A). However, the ALJ must find that a claimant is disabled if insufficient work exists in the national economy for an individual with the claimant's RFC. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010). The Commissioner bears the burden to present sufficient evidence to support a finding of not disabled at step five of the review process. Emory v. Sullivan, 936 F.2d 1092, 1094 (10th Cir. 1991).

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence[.]" Hendron v. Colvin, 767 F.3d 951, 954 (10th Cir. 2014). Crucially, "[i]t is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004). Here, the medical evidence in the record includes 1) plaintiff's 2016 prison medical records; 2) DDS physical agency reviewers' 2018 consultative examination (CE); and 3) plaintiff's June 13, 2019 eye examination, performed by Julie Soto, M.D.. Plaintiff's prison medical records indicate that plaintiff reported eye pain and blurry vision in October 2016, and he was diagnosed with proliferative diabetic

retinopathy in his right eye and severe non-proliferative diabetic retinopathy in his left eye. Dkt. # 15-7, at 31. Similarly, during Dr. Soto's 2019 exam, plaintiff reported blurred vision and eye pain that was constant, and Dr. Soto concluded that plaintiff had proliferative diabetic retinopathy with macular edema in his right eye, and moderate non-proliferative diabetic retinopathy without macular edema in the left eye. Id. at 258, 263. Notably, Dr. Soto asserted that plaintiff is "at high risk of permanent vision loss if retinopathy worsens." Id. By contrast, the physical agency examiners who performed plaintiff's 2018 CE found that plaintiff had DM, but concluded that plaintiff had no visual limitations. Dkt. # 15-3 at 41-43. Moreover, the physical agency examiners found, during plaintiff's 2018 CE, that he had 20/50 visual acuity in the right eye and 20/30 in the left eye. Id. at 44. However, Dr. Soto's exam results--one year after plaintiff's CE results--indicate that plaintiff had unaided visual acuities of 20/100 in the right eye and 20/40+ in the left eye. Dkt. # 15-7 at 260.

Given the inconsistencies between plaintiff's 2016 prison medical records, the physical agency examiners' 2018 CE, and Dr. Soto's 2019 examination, the ALJ's RFC analysis is flawed and not based on a reasonable reading of the medical evidence in the record. Specifically, the ALJ found that the physical agency reviewers' 2018 CE "opinions are consistent with . . . Dr. Soto's eye examination[.]" Id. On the contrary, the physical agency reviewers' findings are in stark contrast to Dr. Soto's findings. Namely, the agency reviewers found that plaintiff had no visual limitations, while Dr. Soto found that plaintiff has severe visual impairments, requires medical intervention, and is at a high risk of permanent vision loss. Moreover, Dr. Soto's diagnosis and plaintiff's reported symptoms of eye pain and blurry vision are consistent with plaintiff's October 2016 prison medical records. And, it appears from the record that plaintiff suffered significant vision loss between the agency reviewers' 2018 CE and Dr. Soto's 2019 examination. Thus, it is unclear why the ALJ found

the agency reviewers' opinions persuasive when they were outdated and the ALJ had Dr. Soto's more recent evaluation before him. Additionally, given that plaintiff reported constant blurry vision and eye pain in 2019, it is unclear why the ALJ's RFC accounted for "occasional" limited depth perception. There is nothing in the ALJ's decision that explains how the medical record evidence substantiates the conclusion that plaintiff has an "occasional" visual limitation. The Court finds that the ALJ improperly cherry-picked "among medical reports, using portions of evidence favorable to his position while ignoring other evidence." Hardman, 362 F.3d at 681. Consequently, the ALJ's RFC analysis was flawed and not supported by substantial evidence because the evidence the ALJ found persuasive was overwhelmed by medical evidence in the record to the contrary. Therefore, the Court finds that the magistrate judge's report and recommendation should be accepted, and reversal and remand is required so that plaintiff's vision impairments can be accurately accounted for in his disability benefits determination.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 24) is **accepted**, and the Commissioner's decision denying plaintiff's claim for disability benefits is **reversed and remanded**. A separate judgment is entered herewith.

**DATED** this 29th day of March, 2022.

                                                                      *Claire V Eagan*
                                                                      CLAIRE V. EAGAN
                                                                      UNITED STATES DISTRICT JUDGE